UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

ACRADYNE, INC.,

               Plaintiff,

   v.

TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA,

               Defendant.

Civil No. CV 04-362-AS

OPINION AND ORDER

**MOSMAN, J.,**

      Plaintiffs AcraDyne and AIMCO seek to recover from their insurer, Defendant Travelers Casualty and Surety Co., sums paid in defending and settling an action brought against them by AcraDyne's former President, Mark Lehnert. Defendant argues the claims asserted by Lehnert and the defense costs sought by plaintiffs are excluded under the express terms of the insurance policy (the "Policy").[1] Before the court are Judge Ashmanskas' Findings and Recommendation on the parties' cross-motions for summary judgment. As set forth below, this court ADOPTS Judge Ashmanskas' Findings and Recommendation (#28):

---

[1] The factual context of this dispute is set forth by Judge Ashmanskas in his Findings and Recommendation and is not restated in this order.

PAGE 1 - OPINION AND ORDER

I.  Severance pay

Lehnert's employment agreement with AcraDyne (the "Agreement") provided that, in the event AcraDyne terminated Lehnert without cause prior to expiration of the Agreement, AcraDyne would continue to pay "Lehnert's salary, at the same time payment intervals and in the same payment amounts in effect at the time of termination, until the end of the six-year term of this Agreement."  Lehnert's complaint alleged AcraDyne failed to make these payments after terminating him.

Plaintiffs argue the sums paid in settlement of this claim are covered under the Policy's Wrongful Employment Practice clause.  Defendant argues these sums are expressly excluded by a Policy provision excluding "severance pay or penalties under an employment contract, or an agreement, policy or procedure providing for payment in the event of separation from employment."  Judge Ashmanskas agreed with defendant that these payments were excluded as "severance pay," which he determined meant "any monies payable to [a] terminated employee pursuant to an agreement, policy or procedure."

Plaintiffs object that Judge Ashmanskas employed an improper analysis in construing the term "severance pay" by failing to follow the method prescribed by the Oregon Supreme Court in *Hoffman Construction Co. of Alaska v. Fred S. James & Co.*, 313 Ore. 464, 836 P.2d 703 (Ore. 1992).  The *Hoffman* analysis requires a court construing an insurance policy to consider: (1) the plain meaning of the disputed term; (2) the context in which the term is used in the policy; and (3) the meaning of the term in the context of the policy as a whole.  *Id*. at 470. Plaintiffs argue Judge Ashmanskas failed to examine the plain meaning of the term "severance pay" and that, had he done so, Judge Ashmanskas would have determined the payments were

covered by the Policy.

The parties agree that the plain meaning of the term "severance pay" is "an allowance usually based on length of service that is payable to an employee on severance, except usually in case of disciplinary discharge." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2081 (1993). Plaintiffs argue this plain meaning requires that severance pay be both (1) based on length of service, and (2) payable in full at the time of termination from employment. Defendant correctly responds that the plain meaning states only that severance pay is "usually" based on length of service. Defendant further argues that the plain meaning contains no requirement that full payment be made immediately upon severance – only that payment be triggered by severance.

Both interpretations are plausible. *See Groshong v. Mutual of Enumclaw Ins. Co.*, 329 Ore. 303, 308, 985 P.2d 1284, 1287 (Ore. 1999) (noting the ease with which counsel can offer competing plausible interpretations of a contract term). Judge Ashmanskas therefore properly considered the context in which the term is used in the Policy. *Hoffman*, 313 Ore. at 470. The phrase "severance pay" appears in a Policy provision excluding claims brought pursuant to a provision of an employment agreement "providing for payment in the event of separation from employment." The broad language of that provision encompasses Lehnert's claims in the underlying action; it does not support the narrower construction of "severance pay" advocated by Plaintiffs. Accordingly, the court adopts Judge Ashmanskas' finding that the funds sought in Lehnert's complaint were expressly excluded from the Policy.

II.     Stock claims

The Agreement provides that Lehnert would be entitled to participate in an incentive

PAGE 3 - OPINION AND ORDER

stock option plan (the "Plan") that had not yet been developed.  The Agreement states that the Plan would provide: (1) that Lehnert would have an option to purchase 25% of the shares of the common, no par value shares of AcraDyne outstanding at the time of the Employment Agreement; (2) Lehnert would immediately be vested in 1/5 of the shares issued under the Plan; (3) terms for vesting of the remainder of the shares; (4) the option exercise price; and (5) a time line for development of the Plan.  Lehnert alleged AcraDyne breached the Agreement by "failing to acknowledge Lehnert's exercise of his option to purchase 25% of AcraDyne's stock and by failing to issue the stock to Lehnert," as well as by "taking actions to render the stock of AcraDyne valueless and thereby defeat Lehnert's stock option rights."

Judge Ashmanskas determined that the breaches alleged in Lehnert's complaint were breaches of the Plan, but not of the Agreement, because "the Agreement did not provide the mechanics for the exercise of the option, the issuance of the stock or the valuation of AcraDyne, only that a Plan would be formed and Lehnert would be entitled to stock options under the Plan." Judge Ashmanskas further concluded that "[i]t appears from the Lehnert Complaint that Plaintiffs complied with these requirements," and that "breach of an incentive stock option plan . . . is not included within the definition of Wrongful Employment Practice."  Judge Ashmanskas therefore determined Lehnert's claim did not allege breach of the Agreement.

Plaintiffs argue the Agreement "incorporates by reference" the stock Plan, such that any breach of the Plan necessarily constituted a breach of the Employment Agreement.  The Agreement does no such thing.  To the contrary, the Agreement contains an integration clause which explicitly states that the Agreement constitutes the entire agreement between the parties.

The Agreement itself is clear and unambiguous.  It provides that AcraDyne would later

PAGE 4 - OPINION AND ORDER

adopt a stock options plan, and that Lehnert would be entitled to participate in that Plan. The parties agreed that Lehnert would begin his employment with AcraDyne prior to the creation of the plan, leaving many details of the Plan for future determination – including any remedies available to Plan participants for AcraDyne's failure to abide by the Plan. The only way to infuse the stock options provision with any ambiguity is, as Plaintiff urges, to insert into the Agreement a provision incorporating the terms of the stock options plan. This is not what Oregon law requires of courts interpreting contracts. Rather, the role of the court in construing a document is simply "to ascertain and declare what is, in terms or substance, contained therein, not to insert what has been omitted." *Yogman v. Parrott*, 325 Ore. 358, 361, 937 P.2d 1019, 1021 (1997) (quoting ORS 42.230). Where the disputed contract terms are unambiguous, the contract must be interpreted according to its terms. *Pacific First Bank v. The New Morgan Park Corp.*, 319 Ore. 342, 347, 876 P.2d 761, 764 (1994). Accordingly, the court adopts Judge Ashmanskas' findings as to Lehnert's stock claims.

III. Negligent misrepresentation and fraud

Lehnert alleged claims of negligent misrepresentation and fraud based on allegations that AcraDyne made certain misrepresentations to induce him to leave his former employer. Judge Ashmanskas determined the alleged misrepresentations were not "employment-related misrepresentations" covered by the Policy because they occurred prior to Lehnert's employment. Judge Ashmanskas further found that Lehnert's alleged misrepresentations were also excluded under the Policy's "known loss" provision, which excludes coverage for any claim "arising out of facts, transactions or events which are or reasonably would be regarded as Wrongful Employment Practices, about which [a] Responsible Person had knowledge prior to the inception

PAGE 5 - OPINION AND ORDER

of coverage under the Policy."

Plaintiffs object that Judge Ashmanskas interpreted the term "employment-related" too restrictively, and argues the term applies to any alleged misrepresentations that have "an established or discoverable relation" to Lehnert's employment relationship. Plaintiffs argue that because any misrepresentations AcraDyne made to induce Lehnert to take a job with AcraDyne clearly have a relationship to his employment there, Lehnert's negligent misrepresentation and fraud claims are Wrongful Employment Practices covered by the Policy.

Even assuming that Lehnert's negligent misrepresentation and fraud claims were covered by the Policy, Judge Ashmanskas correctly determined that the claims were excluded under the Policy's "known loss" provision. Plaintiffs argue Judge Ashmanskas should not have considered this argument because defendant raised it for the first time at oral argument. However, given the opportunity to address the issue in their objections to the Findings and Recommendation, plaintiffs' only argument on the merits is that there is no evidence in the record that AcraDyne knew about the misrepresentations before inception of coverage – i.e., all that is in the record are Lehnert's unproven allegations. This objection lacks merit because the Policy provides that defendant will pay "all Damages on account of a *Claim* . . . for an *alleged* Wrongful Employment Practice." It appears undisputed that Lehnert's claim was for a Wrongful Employment Practice of which, if true, a Responsible Person at AcraDyne would have been aware before issuance of the Policy. Accordingly, the court adopts Judge Ashmanskas' determination that the damages plaintiffs paid on this claim are excluded from the Policy's coverage.

IV.     Expenses incurred in asserting counterclaims

PAGE 6 - OPINION AND ORDER

Defendant has refused to pay $8,000 in legal expenses incurred in connection with counterclaims plaintiffs asserted in the underlying action. Defendant argues these are not "Defense Expenses" covered by the Policy, which defines the phrase as "reasonable and necessary legal fees and expenses incurred in investigation and defense of Proceedings; but Defense Expenses shall not include salaries, wages, benefits or overhead of, or paid to, any Insured or any employee of an insured."

Judge Ashmanskas found that plaintiffs asserted counterclaims as a defensive tactic, and that any benefit from those claims would have inured to defendant. Judge Ashmanskas concluded that the expenses related to plaintiffs' counterclaims were reasonable and necessary for plaintiffs' defense, and were covered by the Policy as such.

Webster's defines "defense," in the litigation context, as "the method and collected facts adopted by a defendant to protect himself against a plaintiff's action." Plaintiffs' assertion of counterclaims is consistent with this ordinary meaning of the term "defense," and is consistent with Judge Ashmanskas' conclusions. This interpretation is also consistent with the context in which the term is used in the policy. *Hoffman*, 313 Ore. at 470. The "Defense Expenses" clause specifically lists items it does not cover: "wages, benefits or overhead of, or paid to, any Insured or any employee of an insured." Not only do counterclaims not appear on this list of excluded items, but they are not of the same type as those items excluded in the Policy. Accordingly, the court adopts Judge Ashmanskas' findings as to plaintiffs' "Defense Expenses."

V.     Conclusion

As set forth above, and in all other respects, the court adopts Judge Ashmanskas' Findings and Recommendation. Plaintiffs' motion for summary judgment is DENIED and

PAGE 7 - OPINION AND ORDER

defendant's motion is GRANTED with regard to plaintiffs' claim for indemnification. On plaintiffs' claim for reimbursement of $8,000 in defense costs related to counterclaims, plaintiffs' motion for summary judgment is GRANTED and defendant's motion is DENIED. Accordingly, judgment shall be entered in favor of plaintiffs in the amount of $8,000.

IT IS SO ORDERED.

DATED this 29th day of July, 2005.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge